# IN THE COURT OF APPEALS OF IOWA

No. 22-0263
Filed April 27, 2022

IN THE INTEREST OF H.B.,
Minor Child,

A.B., Father,
        Appellant.
_____


        Appeal from the Iowa District Court for Wapello County, William S. Owens,

Associate Juvenile Judge.


        A father appeals from the termination of his parental rights.  **AFFIRMED.**



        Joseph P. Goedken of Orsborn, Mitchell, Goedken & Larson, P.C.,

Ottumwa, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Sam K. Erhardt, Ottumwa, attorney and guardian ad litem for minor child.



        Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The father, A.B., appeals following the termination of his parental rights concerning his child, H.B., born in 2011.[1] The Iowa Department of Human Services (DHS) became involved with the family in the summer of 2020 when H.B. was found wandering unattended after being locked out of the hotel room where she and the father lived. The father was found to be using methamphetamine and 3,4-methylenedioxymethamphetamine (MDMA). Soon after DHS became involved, the father assaulted another man with a baseball bat in the hotel room he shared with the child. The child witnessed the assault. And when the father fled the scene, the child was left behind without a caretaker.

The child was placed first in foster care, but then with her father's paramour, A.L.[2] This arrangement was short lived, and the child returned to foster care. Since the father was arrested for the assault at the hotel, the child has not been returned to his care and was adjudicated a child in need of assistance (CINA) in September 2020.

The father was released from jail in December 2020 and began participating diligently with services, including substance-abuse and mental-health evaluations

---

[1] The child's mother also had her parental rights terminated; but she is not a party to this appeal.

[2] The father originally told the child he did not want her placed with his paramour because the paramour and the child had a tenuous relationship. This on-again-off-again relationship has, at times, been marred by domestic abuse. Yet the child has known the paramour for the majority of the child's life.

and treatment, as well as visitation. He progressed to semi-supervised visits but began acting uninterested; then, DHS began to suspect he had relapsed.[3]

As the father's sentencing hearing over the summer 2020 assault grew closer, he stopped actively participating in services and visitation. From May 2021 until his sentencing in October 2021, he avoided substance-abuse and mental-health treatment and stopped medication management. He had only one visit with the child during this time. In response, the child's behavior became more erratic, leading to a string of foster placements and increased instability. The father's tentative discharge date is 2026, though he will be parole-eligible in October 2022. At the termination hearing, the father testified that while incarcerated he has more actively addressed his mental health, joined support groups, and begun taking classes focused on the DHS process; eventually, he plans to take parenting classes as well. As of the termination hearing, the child had not visited the father while in prison because her visitor application had not yet been accepted. Still, the child was undoubtedly attached to her father and wished to maintain a relationship with him.

Based on this history, in January 2022, the juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (f) (2021). The father timely appealed.

---

[3] These suspicions were later confirmed when DHS received allegations of drug possession by the father while he resided in his paramour's home with her children, which DHS determined were founded reports of child abuse.

**Discussion.**

The father challenges the termination of his parental rights but does not challenge the specific grounds for termination. Instead, he argues DHS did not make reasonable efforts to reunify him and the child, the juvenile court should have established a guardianship instead of terminating his parental rights, and the juvenile court should have avoided termination by invoking the permissive exception found in Iowa Code section 232.116(3)(c). Our review of the termination of parental rights is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

*Reasonable Efforts.*

The father does not challenge the specific grounds for termination. Instead, he argues the State did not make reasonable efforts to reunify him with the child. He states he has preserved error for this challenge simply by filing a notice of appeal.[4] The State, on the other hand, argues the issue is not preserved because the father did not challenge reasonable efforts before his appeal.

It is true that when custody of a child is transferred to DHS, the agency must "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7). "'[R]easonable efforts' means the efforts made to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's

---

[4] This is a commonly used but erroneous statement. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) ("However error is preserved, it is not preserved by filing a notice of appeal. While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation." (footnote omitted)).

home." *Id.* § 232.102(10)(a). But the burden falls on the parent "to object when they claim the nature or extent of services is inadequate." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). This request must be made early in the process to allow time for changes; and, "[i]n general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.* at 840 (citation omitted).

As the father did not question the services provided by DHS before his appeal, he has not preserved any challenge to reasonable efforts.

*Guardianship and Permissive Exceptions.*

The father next challenges the court's finding that termination is in the child's best interests. His argument about the child's best interests is made through a broad statement with no case law provided to support his argument; therefore, we address it no further. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all-encompassing argument is insufficient to identify error in cases of de novo review."); *see also* Iowa R. App. P. 6.903(2)(g)(3). But spliced within these statements are challenges to the court's decision not to create a guardianship and failing to recognize the strong bond between the father and the child. We contemplate each more completely below.

On the guardianship challenge, the father contends the juvenile court should have established a guardianship with his paramour rather than terminate his parental rights. *See* Iowa Code § 232.104(2)(d)(1). Guardianships are not a "legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). And, guardianships established under section 232.104(2)(d) require the juvenile court to first find that termination is not in the child's best interests.

*See In re B.T.*, 894 N.W.2d 29, 32–33 (Iowa Ct. App. 2017); *see also* Iowa Code § 232.104(4)(a). After reviewing the record presented, we are convinced termination is in the child's best interests; thus, a guardianship is not appropriate.[5]

Turning to the strength of the bond between the father and the child, we consider the permissive exception to termination in Iowa Code section 232.116(3)(c), which allows the juvenile court not to terminate parental rights when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See also In re A.B.*, 815 N.W.2d 764, 778 n.8 (Iowa 2012) (assuming, without deciding, that mentioning the strength of the relationship without making specific mention of the applicable exception could raise the issue). It is undisputed that the child is very attached to the father and has expressed her wish to maintain her relationship with him. However, the father has not shown this attachment would overcome the reality that termination is in the child's best interests. *See D.W.*, 791 N.W.2d at 709 ("Although it is clear that [the mother] loves her son, our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the child's] developing needs."). He has not exhibited an ability to provide stable and consistent care for her, and when he became discouraged, he stopped trying. *See In re L.L.,* 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must

---

[5] Even if the father had been able to establish termination is not in the child's best interests, the social worker who testified at the termination trial stated a guardianship with the father's paramour would not be possible because of the founded child-abuse reports generated from the father's drug issues in her home.

be constant, responsible, and reliable."). Even he recognized his disinterest was "devastating" to his child's mental health. And with his incarceration, it will be years before the stability of a home can be established. With an eye on a better future for H.B., we decline to invoke this permissive exception. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (acknowledging these exceptions are "permissive, not mandatory. We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship'" (internal citations omitted)).

**Conclusion.**

As the father did not preserve a reasonable-efforts challenge and has not shown that the juvenile court should have either created a guardianship or chosen not to terminate according to Iowa Code section 232.116(3)(c), we affirm the termination of his parental rights.

**AFFIRMED.**